UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANGELIA LASHONNA PIERCE,

    Plaintiff,

v.                                            Case No. 8:20-cv-2636-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

**ORDER**

This is an appeal of the administrative denial of supplemental security income (SSI).[1] *See* 42 U.S.C. § 405(g). Plaintiff argues the administrative law judge (ALJ) committed reversible error by misstating the opinion of consultative examiner Enola Owi, M.D. According to Plaintiff, this misstatement is not harmless, because the ALJ relied on Dr. Owi's (misstated) findings in formulating Plaintiff's RFC. After considering the parties' arguments and the administrative record (docs. 16, 20), I find the Commissioner's decision is not supported by substantial evidence.

  A. Background

Plaintiff Angelia Pierce was born on September 26, 1968, and was 49 years old when she applied for SSI benefits. (R. 28) Plaintiff graduated high school and attended two years of college. (R. 41) She is single, lives alone, and her daughter and home health care worker take turns shopping for her. (R. 44) Plaintiff alleges a disability onset date of June 6, 2017,

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).

due to depression, schizophrenia, a nervous breakdown, arthritis, right knee problems, asthma, PTSD, OCD, restless leg syndrome, and gastritis. (R. 237)

Plaintiff testified that she stopped working on her onset date because she "was having physical problems and mental issues that got to the point to where it was not manageable." (R. 42)  She estimated she can walk for 15 minutes, stand for 15 minutes, sit for 30 to 45 minutes at a time, and carry the equivalent weight of a gallon of milk in each hand for up to 50 feet. (R. 43)  She does not "engage in outside society" due to her mental impairments. (R. 44)  Plaintiff testified she stays in her dark house all day, lying on her bed with her emotional support dog beside her, staring at the TV but not watching it.  She struggles to concentrate, and she feels compelled to wash her hands and scrub the kitchen sink frequently. (R. 48-49)  She explained: "[E]verything goes in a place, a designated place at home . . . and if it's not in that place and I see that it's been moved . . . I feel like somebody is playing with me or like doing it intentionally to move it out the way." (R. 48)  And, "I wash the same glass out all day. . . . I have a cabinet full of dishes but I have only one plate, one bowl, and one cup that I drink out of and one fork that I eat off of." (R. 49)  She compulsively checks her front door to make sure it is locked.  "The house door, I don't open it.  I go through my window and I check it constantly or I turn my TV down to hear to see if anybody is outside on the porch or anything but sometimes I do it maybe 10 times a day." (*Id.*)

After an administrative hearing, the ALJ ordered consultative physical and psychological examinations and propounded written interrogatories on a vocational expert (VE). (R. 26-27)  Considering all the evidence, the ALJ found Plaintiff suffers from the severe impairments of carpal tunnel syndrome, asthma, polyarthralgia, obesity, adjustment disorder,

2

generalized anxiety disorder, PTSD, bipolar disorder, cervicalgia, cervical radiculopathy, and degenerative joint disease. (R.21) Aided by the written testimony of the VE, the ALJ determined Plaintiff is not disabled, despite these impairments, as she retains the RFC perform light work with limitations:

> [T]he claimant can lift and/or carry 20 pounds frequently, 10 pounds continuously; sit for six hours in an 8 hour day; and stand and/or walk for 6 hours in an 8 hour day.  The claimant can sit for 4 hours at a time before having to stand for up to an hour, while remaining on task.  The claimant can occasionally push and/or pull with the left arm, and occasionally lift above shoulder level with the left arm.  The claimant can frequently push and/or pull with the right arm, and occasionally reach above shoulder level with the right arm.  The claimant can constantly reach waist to chest with both arms, handle with both hands, finger with both hands, and feel with both hands.  The claimant cannot climb ladders and scaffolds.  The claimant can occasionally balance and climb ramps and stairs.  The claimant can frequently stoop, kneel, crouch, and crawl.  The claimant cannot work around high, exposed places or pulmonary irritants.  The claimant can occasionally work around moving, mechanical parts; humidity and wetness; extreme cold; extreme heat; and vibration.  The claimant is able to understand, remember, and carry out simple instructions; and they are able to perform simple, routine, repetitive tasks.  The claimant is limited to work that requires occasional changes in the work setting.  The claimant is unable to meet fast paced, high production demands.  The claimant is limited to work that requires occasional interaction with the public, co-workers, and supervisors.

(R. 24)  After consulting the VE's interrogatory responses, the ALJ found that, with this RFC, Plaintiff could not perform her past work as a cleaner and fast food worker but could work as a final inspector, marker, and poly-packer/heat sealer. (R. 28-29) Plaintiff appealed the ALJ's decision to the Appeals Council, which denied review. (R. 1-3)  Her administrative remedies exhausted, Plaintiff sued.

    A.  *Standard of Review*

To be entitled to SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 1382c(a)(3)(A).  A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a)(4).  Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4).  A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The

4

ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

    B. Discussion

        1. *ALJ's consideration of Dr. Owi's consultative opinion*

After Plaintiff's administrative hearing, the ALJ ordered a consultative physical examination, which Dr. Owi conducted on February 3, 2020. (R. 864-77) Plaintiff contends the ALJ relied on Dr. Owi's findings in formulating her RFC, yet materially misstated them (doc. 20 at 7-9). The Commissioner responds that the ALJ properly applied the revised regulations regarding evaluating medical opinions and points out that the ALJ is not required to incorporate every aspect of a medical opinion into a claimant's RFC (*Id.* at 9-13). On this record, I find the Commissioner's decision is unsupported by substantial evidence.

Dr. Owi examined Plaintiff on February 3, 2020, and completed a physical medical source statement afterwards. (R. 868-77) She opined, in relevant part, that Plaintiff can lift and carry up to 20 pounds frequently and can never lift and carry more than 20 pounds. (*Id.*) Plaintiff can sit for four hours at a time, stand for one hour at a time, and walk for one hour

at a time. (*Id.*) Next, Dr. Owi found that Plaintiff can sit for a total of eight hours in a workday and stand and walk for a total of four hours each. (*Id.*)

But the ALJ mischaracterized Dr. Owi's opinion as follows: "Dr. Owi (E21F) opined that the claimant can lift and/or carry 20 pounds frequently, 10 pounds continuously; sit for 6 hours in an 8 hour day; and *stand and/or walk for 6 hours in an 8 hour day*. The claimant can sit for 4 hours at a time before having to stand for up to an hour, while remaining on task." (R. 27) (emphasis added). What Dr. Owi really found was that Plaintiff can stand for up to four hours total and walk for up to four hours total (not six). (R. 869)

The hypothetical question the ALJ propounded on the VE incorporated the ALJ's error. (R. 330-36) He asked the VE: "Assume a hypothetical individual . . . with the following limitations: the individual can lift and/or carry 20 pounds frequently, 10 pounds continuously; sit for 6 hours in an 8 hour day; and stand and/or walk for 6 hours in an 8 hour day. The individual can sit for 4 hours at a time before having to stand up for up to an hour, while remaining on task." (R. 331) The VE testified that with this RFC Plaintiff could not perform her past work because, among other things, the jobs of cleaner and fast food worker may require her to stand and/or walk for more than six hours in a workday. (R. 332) Then, the VE testified that there are three jobs in the national economy Plaintiff can perform: final inspector, marker, and poly-packer/heat sealer. (*Id.*)

Plaintiff's representative pointed out the ALJ's misstatement in a letter objecting to the ALJ's interrogatories to the VE. (R. 337-38) Nonetheless, in the ALJ's decision, the RFC formulation memorialized this error, implying that Plaintiff can stand for a total of six hours (rather than four) and walk for a total of six hours (rather than four). To this point, the

6

Commissioner contends the ALJ applied the revised regulations pertaining to evaluating medical opinions and properly adopted only the portions of Dr. Owi's findings that he found supported. But this is unavailing. The Commissioner cites *Freyhagen v. Commissioner of Social Security*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *8 (M.D. Fla. Sept. 26, 2019), and argues "the regulations do not require the ALJ to adopt every part of an opinion that he finds persuasive into the RFC." (doc. 20 at 13). But *Freyhagen* states that "the ALJ's RFC assessment did not need to match or mirror the findings or opinions of any particular medication sources, *especially when that source has been discredited*." 2019 WL 4686800, at * 8 (emphasis added). Here, the ALJ relied heavily on Dr. Owi's findings. The ALJ stated:

> Overall, the undersigned finds this assessment to be *most persuasive*. Dr. Owi's opinion is both consistent with and supported by the medical evidence. Dr. Owi was able to review the claimant's medical records as well as examine the claimant in person. The examination specifically found that the claimant's knee joints were normal and nontender as well as without discomfort on motion. She also had normal gait without an assistive device.

(R. 28) (emphasis added).

Considering the ALJ mischaracterized Dr. Owi's medical opinion (on which he heavily relied), substantial evidence does not support the ALJ's RFC formulation or the hypothetical posed to the VE that Plaintiff is able to stand and/or walk for a total of six hours in an eight-hour workday. *See Harris v. Saul*, No. 8:19-cv-1468-T-AEP, 202 WL 5700775, at * 4 (Sept. 24, 2020) (reversing ALJ's decision where ALJ misstated consultative examiner's opinion about total time plaintiff could stand and/or walk and incorporated the error into hypothetical question to VE and plaintiff's RFC). Additionally, it is unclear from the record if Plaintiff would still be able to perform the jobs of final inspector, marker, and poly-

7

packer/heat sealer with an RFC of walking only up to four hours and standing only up to four hours. *Id*. Substantial evidence does not support the ALJ's decision.

C. *Conclusion*

It is ORDERED:

(1) The ALJ's decision is REVERSED, and the case is REMANDED to the Commissioner for further administrative proceedings consistent with this Order; and

(2) The Clerk of Court is directed to enter judgment for Plaintiff and close the case.

DONE and ORDERED in Tampa, Florida on June 20, 2022.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

9